a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| BRIAN LOWELL FRAZIER #624162/2019060031, Plaintiff | CIVIL DOCKET NO. 1:19-CV-00696 SEC P |
| VERSUS | JUDGE DAVID C. JOSEPH |
| KEITH DEVILLE, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1) filed by *pro se* Petitioner Brian L. Frazier ("Frazier"). Frazier is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Concordia Parish Correctional Facility in Ferriday, Louisiana. Frazier challenges his conviction and sentence imposed in the Ninth Judicial District Court in Rapides Parish.

Because Frazier is not entitled to habeas relief, his Petition (ECF No. 1) should be DENIED and DISMISSED WITH PREJUDICE.

I.  **Background**

Frazier was indicted for second-degree murder. Following trial, a jury returned an 11-to-1 guilty verdict of the lesser included offense of manslaughter. Frazier was sentenced to 20 years at hard labor. *State v. Frazier*, 2014-1132 (La.App.

3 Cir. 3/4/15); 157 So.3d 1266, 1268, 1275 *writ denied*, 2015-0657 (La. 2/26/16); 187 So.3d 467. According to the Louisiana Third Circuit Court of Appeal:

> Defendant, Brian Frazier, and the victim, Jarvis Dwellingham, were both residents of the Goodwill Apartments, subsidized housing in South Rapides Parish. Defendant previously had issues regarding the ownership or use of the undesignated and unassigned parking spots in front of the Goodwill Apartments, one of which resulted in a police report, and all of which were admitted by Defendant's girlfriend while testifying at trial.
>
> On March 13, 2013, the victim was outside of his apartment tending to his vehicle which, according to Defendant, was double parked in front of their adjacent apartments. Defendant testified at trial that when he asked the victim to move his vehicle within the lines so that Defendant's girlfriend could park in front of the apartments, the victim smiled and went into his own apartment. Defendant claimed that he remained in his apartment with the door open, but with his screen door locked. Defendant testified that he was upset, pacing back and forth in his apartment, mumbling angrily to himself, and told his friend over the phone, "I'm just tired of these bitch ass [n——] not giving anybody any respect." Shortly thereafter, Defendant heard the victim outside saying something in an agitated tone, loud enough for Defendant to hear inside of his apartment. Defendant further testified that he then went outside and the victim confronted Defendant right outside of Defendant's apartment, grabbing Defendant by the neck. Defendant stated that he and the victim "clashed like rams." Defendant claims that he did not enter the altercation with a weapon and just repeatedly "punched" the victim, trying to get the victim off of him. Defendant claimed that at some point he believes that he took something sharp from the victim that resulted in a cut on Defendant's hand.
>
> Defendant testified that the victim then released him and walked away from Defendant, passing between their two vehicles. Defendant went back into his apartment, where he grabbed his keys and inhaler and proceeded to leave the Goodwill Apartments. Defendant stated that it was only when he was leaving his apartment and locking the door did he realize that there was "[blood] all over the door," which Defendant attributed to his "bleeding and dripping" hand. Defendant further testified that as he passed between his and the victim's vehicles while leaving the apartments, he saw something on the ground by his vehicle. He picked the item up and as he left the premises, Defendant testified that he saw the victim talking to someone in the parking lot. Further,

2

Defendant stated that it was not until he was halfway to his friend's house in Alexandria that he noticed he had a punch dagger with a matching sheath on his lap. Defendant testified that the sheath had been the thing he had picked up on the ground before entering his vehicle and exiting the apartment complex. Defendant believes that at some point during the altercation with the victim, Defendant disarmed the victim, obtaining the punch dagger, which resulted in the cut on his hand and the injuries to the victim. Defendant stated that he hid the punch dagger under a seat in his vehicle because "[he] really didn't want to get out of [his] car with any type of weapon in [his] hand. [He] didn't want to be accidentally shot, tased or anything like that."

Glenn Hall, an off-duty police officer, was entering the Goodwill Apartments when Defendant was exiting and noticed that Defendant had scratches on his face. Mr. Hall then saw the victim full of blood and radioed for assistance. Mr. Hall testified that he also called in a BOLO (Be On The Lookout) for Defendant, describing a light skinned male driving a white car with scratches on his face. Soon thereafter, after being observed travelling at least eighty to ninety miles an hour by police officers, Defendant was pulled over just as he entered Alexandria, where he told officers that he had been in an altercation with a man at his apartment complex over parking spaces. Defendant was then brought to the Rapides Parish Sheriff's Office, where he was questioned about the altercation. Defendant was questioned extensively and continuously claimed that he did not remember anything and did not use a knife, a statement that Defendant admitted was a lie at trial. After the initial stop, Defendant repeatedly told the police officers to check his pocket knife for any evidence that he used it in the altercation, but he never mentioned the punch dagger. However, as questioning came to a close, Defendant admitted that the punch dagger was hidden under the back seat of his vehicle. Detective Ronnie Rollins with the Rapides Parish Sheriff Department testified that he arrived on the scene shortly after Defendant was pulled over. Detective Rollins testified that prior to obtaining a search warrant, the vehicle was sealed. Once the search warrant was obtained, Detective Rollins had to manipulate the latches of the back seat to get the back seat out. Once the back seat was removed, the Blackhawk Punch Dagger with the matching sheath was discovered.

Dr. Christopher Tape, a forensic pathologist, testified that the victim had sixteen stab wounds and three to four scratches on his body, and the autopsy report introduced into evidence had diagrams of the locations. Dr. Tape testified that the stab wounds indicated that the knife had been sharpened on both sides of the blade, consistent with that

3

> of a punch dagger. The majority of the stab wounds, a total of nine in a cluster, were located on the left lower back of the victim. Dr. Tape testified that the victim died from the stab wounds and that the wound to the upper left chest that resulted in a perforation of the left lung and a fractured rib was the "immediate or more significant wound; the other would have been fatal eventually, but not immediately."
>
> Dr. Jessica Esparza testified that she performed DNA analysis on items obtained from the victim and Defendant. The blood of both the victim and Defendant was found on Defendant's shirt. Further, Dr. Esparza testified that the blood of Defendant was found on the punch dagger as well as Defendant's apartment screen door.

*Frazier*, 157 So.3d at 1266, 1268–71.

On appeal, Frazier argued that the evidence established that he was acting in self-defense; the homicide was justified; and the evidence did not support his conviction. *Id.* Additionally, Frazier claimed that "he should have been granted a new trial based on an incorrect jury instruction, or, alternatively, he should get a new trial because ineffective counsel failed to object to the incorrect instruction." *Id.* Further, Frazier claimed that the trial court erred by instructing the jury it could consider flight as relevant evidence when the evidence did not establish his flight. *Id.* Finally, Frazier maintained that his sentence was excessive. The appellate court affirmed the conviction and sentence, and the Louisiana Supreme Court denied writs. *Id.*; *State v. Frazier*, 2015-0657 (La. 2/26/16); 187 So.3d 467.

Frazier filed an application for post-conviction relief in the trial court, claiming that he received ineffective assistance of counsel at trial when: (1) his attorney failed to object to the removal of negligent homicide as a responsive verdict; (2) his attorney failed to object to an incorrect jury instruction regarding self-defense; and (3) his attorney failed to object to a jury instruction regarding flight. ECF No. 1-5 at 44-49.

4

The trial court denied the application. The appellate court found that the first claim was repetitive. ECF No. 1-2 at 5. It also determined that the trial court correctly concluded the record did not support a verdict of negligent homicide but did support a jury instruction on flight. *Id.* The Louisiana Supreme Court denied writs, finding that Frazier failed to show he received ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Frazier*, 2018-1287 (La. 4/8/19); 267 So.3d 60.

In his § 2254 Petition, Frazier raises the sufficiency of the evidence claim, the excessive sentence claim, and the three ineffective assistance of counsel claims. ECF No. 1 at 7-13. Frazier also presented three admittedly unexhausted claims, which have been dismissed as procedurally defaulted. ECF No. 7.

According to the State's Response to the Petition, Frazier's claim regarding the excessive nature of his sentence was not properly exhausted and is now procedurally defaulted. ECF No. 15 at 4-5. The State seeks dismissal of the other claims on the merits.

## II. Law and Analysis

### A. Rule 8(a) Resolution

The Court is able to resolve Frazier's § 2254 Petition without the necessity of an evidentiary hearing because there are no genuine issues of material fact relevant to Frazier's claims, and the state court records provide an adequate factual basis. *See Moya v. Estelle*, 696 F.2d 329, 332-33 (5th Cir. 1983); *Easter v. Estelle*, 609 F.2d 756, 761 (5th Cir. 1980); Rules Governing Section 2254 Cases.

5

### B. Frazier's excessive sentence claim is meritless.

The State alleges that "a review of Petitioner's exhibits indicates he did not request review by the Louisiana Supreme Court of the denial of this issue by Louisiana Third Circuit Court of Appeal Case No. 14-1132 and acknowledged by the Petitioner in his Petition at page 12." ECF No. 15 at 1. The State fails to cite to the writ application in the record to show the absence of this claim. And the Court conducted a review of the record provided by the State and could not locate either the writ application filed in the Louisiana Supreme Court or the State's response to the writ application. Frazier's § 2254 Petition indicates that he did raise the excessive sentence claim on direct appeal rather than on post-conviction review. ECF No. 1 at 19-20. Because the State did not provide the full record with the Supreme Court writ application, it is still unclear whether this claim was fully exhausted.

However, the claim can be dismissed either way. If the claim was not presented to the Louisiana Supreme Court in Frazier's writ application on direct review, the claim is procedurally defaulted.[1]

If Frazier's excessive sentence claim was included in his writ application on direct review, it was finally denied by the Louisiana Supreme Court's one-word written ruling. *State v. Frazier*, 2015-0657 (La. 2/26/16); 187 So.3d 467. The Third Circuit provided reasons for denying the claim. "Where there has been one reasoned

---

[1] Procedural default exists in relevant part where a petitioner fails to properly exhaust all available state court remedies, and the state court which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). The petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999).

6

state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Thus, if Frazier pursued this claim in the Louisiana Supreme Court, the claim was fully adjudicated on the merits. "Under AEDPA, if a state court has adjudicated a habeas petitioners claims on the merits, he may receive relief in the federal courts only where the state court decision 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007) (quoting 28 U.S.C. § 2254(d)).

An excessive sentence claim presents a question of law. *See Pierre v. Leger*, 6:09–CV–1881, 2011 WL 2559879 (W.D. La. May 16, 2011), *report and recommendation adopted*, 2011 WL 2560267 (W.D. La. June 28, 2011), *aff'd*, 495 F. App'x 403 (5th Cir. 2012); *Davis v. Cain*, 44 F.Supp.2d 792, 798 (E.D. La. 1999). "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 404–08 (2000)). To merit habeas relief, a state court's application of federal law must be not only incorrect but "objectively

7

unreasonable." *Renico v. Lett*, 559 U.S. 766, 777-78 (2010); *see also Shriro v. Landrigan*, 550 U.S. 465 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

On direct appeal, the Third Circuit rejected Frazier's excessive sentence claim. The court pointed out that the maximum sentence for a person convicted of manslaughter is 40 years, and Frazier received a sentence of 20 years. *Frazier*, 157 So.3d at 1275. Before pronouncing the sentence, the trial judge considered numerous letters written on Frazier's behalf (ECF No. 26-4 at 42); testimony from five witnesses as to Frazier's character (ECF No. 26-5 at 1-19); testimony from the victim's mother (ECF No. 26-5 at 20-28); and testimony from Frazier (ECF No. 26-5 at 29-33). *Frazier*, 157 So.3d at 1275.

According to the Third Circuit,

> The trial court then indicated that it had gone through some of the guidelines of La. Code Crim. P. art. 894.1. It determined Defendant required correctional treatment "most effectively done within an institution." The trial court believed "[a]nything less than a jail term just would make light of what [the victim's] life was all about." The trial court noted Defendant used a weapon that inflicted deadly harm on the victim. The trial court considered Defendant's criminal history of only one drug charge as a mitigating factor but determined the "anger and bad decisions" arising out of this incident were unrelated to his criminal history. Thus, the lack of a "prior bad record [did] not mean a sentence is not appropriate." The trial court recommended Defendant's placement in a re-entry program. Her decision was influenced by Defendant's choice to leave the scene of the incident rather than to call the police. The trial court also considered the jury's finding that Defendant was "the aggressor in the incident" and her concerns about Defendant's behavior prior to the incident, the anger he expressed, and his behavior after the stabbing.

*Frazier*, 157 So.3d at 1276–77. The Third Circuit concluded that the trial court thoroughly considered the sentencing factors and did not abuse its wide discretion in sentencing Frazier to a mid-range sentence of 20 years at hard labor with credit for time served. *Id.* at 1277.

To the extent Frazier argues that his sentence is excessive under Louisiana law or that the trial judge failed to follow the state sentencing guidelines, the claim is not cognizable here. Federal habeas corpus relief is available only for violations of federal constitutional law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998).

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F.2d 921, 923–24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, meaning petitioner failed to state cognizable habeas claim for excessive sentence). If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense. *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983).

To the extent that Frazier is claiming that his sentence is excessive under the Eighth Amendment of the United States Constitution, his claim is without merit. The Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem*, 463 U.S. at 284. "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within

9

the province of legislatures, not courts." *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997) (citing *Rummel v. Estelle*, 445 U.S. 263, 274–76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Gonzales*, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." *Id.* (quotation marks omitted).

The United States Court of Appeals for the Fifth Circuit has set forth the framework to be used when analyzing a sentence that is challenged as being excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then … compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

*McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). Therefore, Frazier is not entitled to relief unless he can demonstrate that his sentence is grossly disproportionate to the underlying offense by comparing the gravity of that offense against the severity of the sentence.

*Rummel v. Estelle* "establishes a benchmark for disproportionate punishment under the Eighth Amendment." *Rummel*, 445 U.S. 263 (1980); *Gonzales*, 121 F.3d at 943. The Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The life sentence was imposed under a Texas recidivist statute and considered the petitioner's prior convictions for

fraudulent use of a credit card and passing a forged check. Thereafter, the Fifth Circuit's position has been plain:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in *Rummel* falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

*Gonzales*, 121 F.3d at 943 (footnote omitted).

Applying this standard and considering the *Rummel* finding that a life sentence was not excessive when imposed for a nonviolent property offense where the habitual offender had two prior nonviolent property offenses, Frazier's 20-year sentence for manslaughter is not grossly disproportionate in light of the severity of the offense. Thus, Frazier has not shown that his "mid-range" sentence is contrary to or an unreasonable application of the clearly established federal law.

    C.    <u>The evidence was sufficient to convict Frazier of manslaughter.</u>

Frazier alleges that he was acting in self-defense when he killed the victim. Thus, he contends that the homicide was justified and that the jury erred in finding him guilty of manslaughter. *Frazier*, 157 So.3d at 1271.

Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). When a state prisoner challenges the sufficiency of the evidence in a federal habeas proceeding, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution,

11

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. It is within the sole province of the jury to judge the credibility of witnesses, evaluate witnesses' demeanor, resolve conflicts in testimony, and weigh evidence in drawing inferences from the facts. *See United States v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 1998). Courts do not second-guess the weight or credibility of the evidence. *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999). Moreover, where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *See Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).

The Third Circuit evaluated Frazier's claim using the *Jackson* standard. The court noted that, under Louisiana Revised Statutes 14:31(A), manslaughter is a homicide that would be murder, "but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." *Frazier*, 157 So.3d at 1272. A homicide is justifiable when it is "committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." *Id.* (citing La. R.S. 14:20(A)(1)). "When a defendant asserts he should not be found guilty because the killing resulted from self-defense, the State bears the burden of proving beyond a reasonable doubt the defendant did not act in self-defense." *Id.* (citing *State v. Richards*, 06–1553 (La. App. 3 Cir. 5/2/07), 956 So.2d 160, *writ denied*, 07–1129 (La. 12/14/07), 970 So.2d 529.

The appellate court concluded:

> In the present case, the evidence presented at trial showed that Defendant had been protective and defensive of the parking places at the Goodwill Apartments, even though the parking spaces were not assigned and certainly not reserved in his name. Further, Defendant testified that when he confronted the victim about the parking spots on the day of the victim's death, the victim replied with a smile, which only further aggravated Defendant, leading Defendant to pace around his apartment mumbling in anger to himself and resulting in his friends telling Defendant over the phone to leave the apartment before "something happened."
>
> Defendant denied knowing anything about the punch dagger until he knew that he was going to jail. While testifying at trial, Defendant alleges that he thought he was just punching the victim because he wanted the victim off of him. Defendant testified that he still does not know how he obtained the punch dagger, but that he must have obtained it from the victim, and the victim must have dropped the sheath between their two vehicles when the victim walked away from Defendant.
>
> We find that Defendant's actions, statements, testimony, and the evidence and statements of others gave any rational trier of fact the chance to view the evidence in such a way to conclude that the sixteen stab wounds and three to four scratches leading to the victim's death were not committed in self-defense.

*Frazier*, 157 So.3d at 1273. The Third Circuit found that Frazier's actions were committed in sudden passion and heat of blood, which "had been admittedly brewing for [Frazier] for some time." *Id.* The court concluded that "the jury in this case was presented with all of the evidence, including numerous facts that could lead any reasonable fact-finder to conclude that [Frazier] was not credible and his story completely unbelievable." *Id.*

Frazier has not shown that the court's decision was "contrary to or involved an unreasonable application of" *Jackson*, or that the decision "resulted in a decision that

13

was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

    D.    <u>Frazier cannot establish ineffective assistance of counsel.</u>

Frazier alleges that counsel was ineffective by: (1) failing to object to the removal of negligent homicide as a responsive verdict; (2) failing to object to an incorrect jury instruction regarding self-defense; and (3) failing to object to a jury instruction regarding flight. ECF No. 1.

Pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment; and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id.* at 687. The first prong does not require perfect assistance by counsel; rather, a petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* at 688. Courts must use deference in their review of attorney performance under *Strickland* to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 689). Accordingly, courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

*Strickland*'s second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In other words, the petitioner must show prejudice great enough to create a substantial—rather than conceivable—likelihood of a different result. *See Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

Frazier alleges that trial counsel was ineffective by failing to object to the removal of negligent homicide as a responsive verdict. The trial court found that the exclusion of negligent homicide as a responsive verdict was appropriate under Louisiana law because the evidence presented at trial did not support a reasonable finding of guilt on that basis. ECF No. 26-14 at 3.

The court found that the evidence presented at trial established that Frazier had "issues regarding the use of parking spots at his apartment complex." ECF No. 26-14 at 4. He testified that he had been upset about the victim double-parking and had "[paced] back and forth in his apartment [and mumbled] angrily to himself." *Id.* He overheard the victim say something and went outside to confront the victim. *Id.* A fight ensued where Frazier and the victim "clashed like rams" and he repeatedly punched the victim. *Id.*

"At some point, he took something sharp from the victim." *Id.* When Frazier left his apartment afterward, he noticed blood on the door and cuts to his hand and

15

face. *Id.* The forensic pathologist testified that the victim had 16 stab wounds and three to four scratches. *Id.* The victim died from the 16 stab wounds. *Id.*

According to the court, negligent homicide was properly excluded because "a reasonable man would not stab someone sixteen times in order to stop a fight." *Id.* Had a jury found negligent homicide, the verdict would have been reversed because it would not be supported by the evidence. *Id.* In denying post-conviction review, the court found that, since the trial court was correct in excluding the responsive verdict, counsel could not have been ineffective for failing to object. *Id.*; *see also State v. Frazier*, 2018-1287 (La. 4/8/19); 267 So.3d 60.

Under § 2254, counsel's performance cannot be considered deficient or prejudicial if he fails to raise a non-meritorious argument or fails to assert a frivolous objection. *See Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007) (citing *Green v. Johnson*, 160 F.3d 1029, 1037 (1998); *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). Therefore, Frazier cannot show that the state court's denial of his claim was contrary to or an unreasonable application of *Strickland*.

Next, Frazier claims counsel was ineffective in failing to object to a jury instruction on self-defense. On direct appeal, the Third Circuit stated:

Regarding self-defense, the trial court instructed the jury:

> A homicide is justifiable if committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. The danger need not have been real as long as the defendant reasonably believed that he was in actual danger. Some factors that you should consider in determining whether the defendant had a reasonable belief that the killing was necessary are the possibility of avoiding the

16

> necessity of taking human life by retreat, the excitement and confusion of the occasion, the possibility of preventing the danger to himself by using force less than killing, and the defendant's knowledge of the assailant's dangerous character.
>
> However, the legislature has provided in La.R.S. 14:20(D) that when a fact-finder is considering justifiable homicide:
>
>> No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry.
>
> As stated in Assignment of Error Two, Defendant, through counsel, did not object to the inclusion of the retreat language when the trial court instructed the jury as stated above. Consequently, Defendant contends that counsel was ineffective in not objecting.
>
> The issue of whether retreat before the stabbing occurred as opposed to flight after the act concluded was not an issue addressed or argued by either party at trial. It was not a focal point of trial and not an issue that the jury would have focused on in reaching its determination that Defendant did not act in self-defense when he stabbed defendant a total of sixteen times. In finding Defendant guilty of manslaughter, the jury made a credibility determination. In its eleven to one verdict of guilty of manslaughter, the jury clearly concluded that Defendant's rendition of the events that took place on March 13, 2013 was implausible. Thus, we find that even though Defendant's counsel failed to object to the erroneous jury instruction given by the trial court, the State met its burden of proving that the inclusion of the retreat language was not an issue at trial. Assuming arguendo that the failure of trial counsel to object to the instruction in question may constitute ineffective assistance of counsel, a point we do not reach, the inclusion of the retreat language in the instruction was harmless and did not prejudice Defendant. *See State v. Duplichan*, 06–852 (La.App. 3 Cir. 12/6/06), 945 So.2d 170, *writ denied*, 07–148 (La.9/28/07), 964 So.2d 351. We find the second prong of the *Strickland* test is not met, thus, Defendant's third assignment of error lacks merit.

*Frazier*, 2014-1132 (La.App. 3 Cir. 3/4/15, 11–13); 157 So.3d 1266, 1274–75, *writ denied*, (La. 2/26/16); 187 So.3d 467. The Louisiana Supreme Court affirmed. On

17

post-conviction review, the court concurred with the earlier finding that counsel's performance did not prejudice Frazier.

Frazier's claim that the outcome of the trial would have been different without the erroneous jury instruction is conclusory. He has not shown that the erroneous instruction denied him his constitutional rights. *See Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"). Therefore, even though counsel failed to object to the erroneous instruction, Frazier cannot meet the second prong of the *Strickland* test.

Finally, Frazier argues that counsel was ineffective by failing to object to a jury instruction regarding flight. The jury instruction at trial included the following:

> Evidence of flight, concealment, and attempt to avoid apprehension is relevant. It may indicate consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt.
>
> If you find the Defendant fled immediately after a crime was committed or after he was accused of a crime, flight alone is not sufficient to prove that he is guilty. However, flight may be considered in light of all of the other evidence. You must decide whether such flight was due to consciousness of guilt or to other reasons unrelated to guilt.

ECF No. 23-1 at 5.

On post-conviction review, the trial court found that the evidence presented at trial "shows that after the altercation, [Frazier] grabbed his keys and inhaler and left his apartment. He then got in his car and left the apartment complex. [Frazier] was further observed traveling at least eighty to ninety miles an hour away from his apartment complex." ECF No. 26-14 at 6. The court noted that "[e]ven though the

flight was brief in terms of both time and distance, there was still flight by [Frazier] from the scene of the crime." *Id.* Because there was no error in instructing the jury on flight, the court concluded there could be no ineffective assistance by counsel for failing to raise a frivolous objection. *Id.*

Therefore, Frazier cannot meet either prong of the *Strickland* test. He cannot establish that counsel's performance was deficient or that he was prejudiced. *See Turner*, 481 F.3d at 298 (counsel cannot have rendered ineffective assistance by failing to make an objection that would have been meritless).

### III. Conclusion

Because Frazier cannot establish entitlement to relief, his § 2254 Petition should be DENIED and DISMISSED WITH PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

19

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a circuit justice or district judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within 14 days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

SIGNED on Monday, June 14, 2021.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE